Corrine Betty FLADELAND and Bonnie Kay Fladeland, by her Guardian ad litem, Lioneld Fladeland, Sr., Plaintiffs and Appellants,

v.

Erwin MAYER, Defendant and Respondent.

No. 7873.

Supreme Court of North Dakota.

April 7, 1960.

Palda, Palda, Peterson & Anderson, Minot, for plaintiffs-appellants.

Ella Van Berkom, Minot, for defendant-respondent.

STRUTZ, Judge. (On reassignment.)

The plaintiff Corrine Betty Fladeland is the widow of Lioneld Fladeland; the plaintiff Bonnie Kay Fladeland is the infant daughter of Corrine and Lioneld Fladeland. The widow and the child, by her guardian ad litem, bring this action for the death of Lioneld allegedly caused by the illegal sale of alcoholic beverages by the defendant, Mayer, such sale having been made under the following circumstances:

The deceased Lioneld Fladeland, together with two minor companions, pooled their resources and had one of the minors, Ronald Lee Robbins, purchase two pints of orange-flavored vodka, an alcoholic beverage. This purchase was made from the defendant, who is a licensed retail liquor dealer at New Sanish, North Dakota. As a result of drinking such alcoholic beverage, Lioneld Fladeland was involved in an automobile accident in which he suffered injuries resulting in his death.

It is conceded that the sale of such alcoholic beverage to Robbins was an illegal sale, since Robbins was a minor of the age of nineteen years. The plaintiffs contend that the defendant, having made such illegal sale, is liable for damages resulting from the intoxication of the deceased. The defendant, on the other hand, contends that he did not sell such alcoholic beverage to the deceased; that the sale was made to Robbins and, although it was illegal, it cannot be the basis for liability in an action for damages resulting from the drinking of such liquor by the deceased who secured the liquor from Robbins, the party to whom such unlawful sale was made. It is conceded that the three minors pooled their resources and had one of them make the illegal purchase, although there is no evidence in the record to show that the defendant, Mayer, knew that the deceased, Lioneld Fladeland, was to receive any of such liquor. Nor does the record disclose any evidence that the sale was made to Robbins by the defendant in the presence of Lioneld Fladeland so that the defendant knew or had reasonable grounds to believe that Lioneld Fladeland would consume a part of the liquor sold.

The trial court dismissed the complaint of the plaintiffs on the ground that there is no legal liability on the part of the defendant to the plaintiffs by reason of the unlawful sale to Robbins and the subsequent intoxication and death of Fladeland.

The sole issue presented on this appeal is whether the widow and minor child of Lioneld Fladeland, a minor, can recover for the loss of support resulting from the death of a minor caused by the drinking of intoxicating beverages which had been sold unlawfully to a minor companion of the deceased by the defendant.

In order to determine whether the plaintiffs have a cause of action under the facts in this case, it is necessary to consider the provisions of the so-called Civil Damage Act, Section 5-0121 of the North Dakota Revised Code of 1943. This section provides for the recovery of damages for illegal sale of liquor, and reads as follows:

"Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, shall have a right of action, in his or her

own name, against any person who, by selling, bartering, or giving away alcoholic beverages contrary to the provisions of this title, shall have caused the intoxication of such person, for all damages actually sustained as well as for exemplary damages. All damages recovered by a minor under this section shall be paid either to such minor, or his or her parent, guardian, or next friend, as the court shall direct. All suits for damages under this section shall be by civil action in any of the courts of this state having jurisdiction thereof."

Analyzing the provisions of this statute, there can be no doubt that the deceased's widow and child were injured in their means of support in consequence of the intoxication of Lioneld Fladeland. Does the husband and father, under the circumstances of this case, come within the designation of "any person," as used in the phrase "in consequence of intoxication, * * * of any person, shall have a right of action, * * * against any person who, by selling, bartering, or giving away alcoholic beverages contrary to the provisions of this title, shall have caused the intoxication of such person, * * *"?

Construing the provisions of this statute, it is apparent to this court that the Legislative Assembly was giving to every wife and child injured by any intoxicated person a right of action against any person "who, by selling, bartering, or giving away alcoholic beverages contrary to the provisions of this title, shall have caused the intoxication of such person, * * *."

Did the Legislative Assembly intend to hold any person who illegally sold, bartered, or gave away alcoholic beverages illegally, liable for any mischief which that particular alcoholic beverage might cause, regardless of how remote its use might be from the illegal sale, barter, or gift, or did the Legislative Assembly intend to hold the person who illegally sold, bartered, or gave away such alcoholic beverages illegally,

liable for damages its use might cause by reason of the intoxication of the person to whom it was sold, bartered, or given?

Clearly, the former interpretation would or could lead to ridiculous results. For example, an illegal sale might be made and the alcoholic beverage so illegally sold might thereafter pass through a dozen hands and finally be lost. The finder might consume the beverage and, as a result of his drinking the same at such remote time, might become intoxicated and, by reason of such intoxication, might cause damage. Should the remote illegal sale of the alcoholic beverage make the original seller liable? We believe the Legislature intended to fix liability on the maker of an illegal sale where such sale causes the intoxication of the person doing the damage. Thus the illegal sale must have been made to the person whose intoxication caused the damage complained of. Or such a sale must have been made to a person under such circumstances that the seller knew or had reasonable grounds to believe that the person to whom such sale was made would give or share such alcoholic beverage with the person whose intoxication caused the damages suffered. Bell v. Poindexter, 336 Ill.App. 541, 84 N.E.2d 646.

Several cases decided by the Supreme Court of Michigan support the contention that liability of the seller of intoxicating beverages under a statute similar to our Civil Damage Act, Section 5–0121 of the North Dakota Revised Code of 1943, rests on the seller only if his immediate purchaser becomes intoxicated and causes the damage complained of, and that if the liquor, though illegally sold, thereafter is transferred to others who drink it and become intoxicated and cause damage to persons, property, or means of support of a third party, the original seller is not liable.

In the case of West v. E. P. Leiphart & Co., 169 Mich. 354, 135 N.W. 246, the court had before it such a situation. In that case the defendant sold alcoholic beverages to a minor and an habitual drunk, both sales

being illegal. The purchasers thereafter gave some of the liquor to the plaintiff's son, who became intoxicated. While they were trying to escort the plaintiff's son from his home to a place where they could sober him up, a freight train crossed the street just as they reached the track. On a drunken impulse the plaintiff's son ran toward the train, made a grab for one of the cars, was thrown under the wheels of the moving train, and was killed. Plaintiff's action was for loss of support. The Michigan statute, Section 5398 of the 1897 Compiled Laws, provided that every person injured by the selling or furnishing of intoxicating liquor to any person illegally had a right of action against the person who, by such sale, caused or contributed to the intoxication of such person.

The Michigan court held that the illegal sale must have proximately caused the intoxication which resulted in the injury in order to give a right of action. Where such liquor was illegally sold to a third person who, without the original seller's knowledge, sold or gave it to the plaintiff's son who became intoxicated and was killed, his death as a result of the intoxication was not the proximate result of the sale by the original seller so as to make him liable for the death of the plaintiff's son.

A later Michigan case, Maldonado v. Claud's, Inc., 347 Mich. 395, 79 N.W.2d 847, reaches the same conclusion and holds that liability for the unlawful sale of intoxicating beverages, under a statute similar to the North Dakota Civil Damage Act, rests on the immediate seller so that if liquor is transferred to others who drink it, become intoxicated, and cause damage to persons or property or means of support of a third party, the original seller is not liable. We feel that the reasoning of the Michigan cases is sound, and that where, as in the case before us, a minor illegally purchased two pints of orange-flavored vodka from the defendant but made no statement to the defendant indicating that he was making the purchase for

other minors, and where there is absolutely no evidence showing that the defendant knew or had reasonable grounds to believe that the buyer would share a part of such alcoholic beverage with another minor, the defendant is not liable under the Civil Damage Act.

The appellant cites the North Dakota case of Iszler v. Jorda, 80 N.W.2d 665, 667, 64 A.L.R.2d 696. In that case this court, in construing the provisions of our Civil Damage Act, said:

"It clearly gives a cause of action to every person who is injured in person, property or means of support as the result of the intoxication of any person when the intoxication was caused by the use of alcoholic beverages sold or given away in violation of the law."

What this court was saying in the Iszler case is that the statute gives a cause of action to every person who is injured in person or means of support as a result of the intoxication of "any person" when the intoxication is caused by the use of alcoholic beverages sold or given away, to the intoxicated person, contrary to law.

The appellant cites the Minnesota case of Benes v. Campion, 186 Minn. 578, 244 N.W. 72, which involved the interpretation of a law very similar to the North Dakota Civil Damage Act. In that case the defendants Tom Wrabek and his wife illegally furnished liquor to the defendant Campion. The Wrabeks had no knowledge or reason to believe that Benes would get any of that liquor. Campion, however, gave some of the liquor to Benes, as a result of which he fell along the highway on the way home, remaining there all night in freezing temperatures, and froze his hands and feet. Because of such exposure, Benes suffered amputation of both hands and seven toes. His wife, as plaintiff, brought an action against both Campion and the Wrabeks under a Minnesota statute which provided:

"Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, shall have a right of action, in his or her own name, against any person, who shall by illegally selling, bartering, or giving intoxicating liquors, have caused the intoxication of such person, * * *" Mason's Minn.St.1927, § 3239, M.S.A. § 340.95.

A verdict returned against the defendants Wrabek, who had furnished the liquor to Campion who in turn had given it to Benes, was set aside by the trial court on motion for judgment notwithstanding the verdict. The plaintiff appealed, and the Minnesota court held that the Wrabeks were liable for the damages suffered by the wife of Benes for injury to her means of support caused by the intoxication of her husband under the circumstances of the case. The court, however, makes much of the fact that the liquor sold was bootleg liquor. The sale of all liquor was prohibited at the time of that sale. The Wrabeks knew not only that the sale to Campion was illegal, but knew, or should have known, that the sale or giving of such liquor by Campion would also be an illegal sale or gift. Where all sales and gifts of alcoholic beverages were illegal, regardless of how many transactions were involved, the Minnesota court held that those making the original illegal sale were responsible for the consequences of intoxication resulting from the use of such beverage unlawfully sold. The Minnesota court carefully pointed out that everything connected with the manufacture and sale of the moonshine liquor was forbidden. Everything connected with it was unlawful. The makers of the stuff intended that it be sold and finally consumed, and committed a crime. Under those circumstances, the proximate cause and consequent liability can be ascribed to the original makers and sellers for the final result.

We believe, therefore, that the Minnesota decision can clearly be distinguished from the facts before us in the instant case.

For reasons stated herein, the illegal sale by the defendant to the minor Robbins cannot be said to be the cause of the intoxication of the minor Lioneld Fladeland.

The judgment of the district court is affirmed.

SATHRE, C. J., and TEIGEN, BURKE and MORRIS, JJ., concur.